# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| | : | |
| v. | : | DATE FILED: _____ |
| | : | |
| ALEXANDER LEBED | : | VIOLATIONS: |
| LARISA LEBED | : | 18 U.S.C. § 1343 (wire fraud - 26 counts) |
| | : | 18 U.S.C. § 1341 (mail fraud - 8 counts) |
| | : | 18 U.S.C. § 1957 (laundering monetary |
| | : | instruments over $10,000 - 95 counts) |
| | : | Notice of forfeiture (18 U.S.C. § 981 and |
| | : | 28 U.S.C. § 2461) |
| | : | Notice of forfeiture (18 U.S.C. § 982) |

## I N D I C T M E N T

## COUNTS ONE THROUGH TWENTY-SIX
### 18 U.S.C. § 1343
### (Wire Fraud)

**THE GRAND JURY CHARGES THAT:**

## INTRODUCTION

At all times relevant to this indictment:

### Defendants

1.      Defendant ALEXANDER LEBED was co-owner, Chief Executive Officer, and President of CSC Institute, Inc. ("CSC"), a private adult vocational school operating at 1111 Street Road, Southampton, Pennsylvania, 2607 Rhawn Street, Philadelphia, Pennsylvania, and at 496 and 1020 North Kings Highway, Cherry Hill, New Jersey.  Among other things, defendant ALEXANDER LEBED supervised and directed all aspects of the business operations of CSC, including the enrollment of students and the creation and maintenance of CSC business records.

2.      Defendant LARISA LEBED, wife of defendant ALEXANDER LEBED, was co-owner, Chief Financial Officer and Chief On-Site Administrator of CSC.   Among other things, defendant LARISA LEBED supervised and directed CSC employees in all aspects of the financial operations of CSC, including the creation and maintenance of CSC financial records, the transmission of applications to the United States Department of Education ("Department of Education") seeking federal financial aid for CSC students, and the transmission of information regarding the disbursement and refund of federal financial aid.

## CSC Institute

3.      CSC, previously known as Compu Source Consulting, Inc., offered vocational training for adult students in the business, medical and computer fields, and in English as a second language ("ESL").

4.      On or about August 27, 1998, the Accreditation Council For Independent Colleges and Schools ("ACICS"), an accrediting agency approved by the Department of Education, accredited CSC to provide specified programs at its campus located at 1111 Street Road, Southampton, Pennsylvania, until on or about December 31, 2001.  On or about December 11, 2000, ACICS accredited a CSC learning site, located at 496 North Kings Highway, Suite 101, Cherry Hill, New Jersey.  On or about January 2, 2002, ACICS renewed CSC's accreditation for the Southampton and Cherry Hill locations until 2007.

5.      Following CSC's initial accreditation by ACICS, the Department of Education determined on or about November 17, 1998, that CSC was eligible to receive federal student aid for approved educational programs.

2

6.    On or about October 15, 2004, CSC moved its Southampton campus and its Cherry Hill learning site to a consolidated facility at 2607 Rhawn Street, Philadelphia, Pennsylvania.

7.    CSC closed on or about February 11, 2005, following a determination by the Department of Education that CSC was no longer eligible to receive federal financial aid.

### Pell Grant (Title IV) Program Requirements

8.    The Department of Education was an agency of the United States government responsible for administering various educational programs throughout the United States, including those based on Title IV of the Higher Education Act of 1965.  These programs were sometimes referred to as "Title IV" programs, and included the Pell Grant Program, described as follows:

a.    The Pell Grant Program was a Title IV program which provided monetary grants to eligible economically-disadvantaged students, up to approximately $4,000 annually per student, to pursue post-secondary education at eligible schools.  Students awarded Pell grants were not required to repay the Pell funds.  The Department of Education authorized Pell funds to be disbursed directly to the school to pay the students' tuition and other educational costs for eligible courses.  Schools receiving Pell funds held the funds in trust for the benefit of the students.

b.    Pell funds typically were disbursed in two installments by wire transfer authorized by the Department of Education, from Washington, D.C., to the school where the beneficiary student was enrolled.  There were two disbursement periods: the first disbursement could be requested by the school up to ten days before the start of classes; the second

disbursement could not be made until after the student had completed half of the required hours

of attendance or academic credits of the Pell-eligible program.  For a Pell recipient who

terminated his program of study after completing at least 60 percent of a Pell disbursement

period, Title IV regulations entitled the school to keep the whole Pell disbursement for that

period; otherwise, Title IV regulations required the school to refund the unused Pell funds to the

Department of Education in accordance with specific regulatory calculations.

        c.      For a school to be eligible to participate in a Title IV financial aid

program, the Department of Education required, among other things, that:

        (i)      the school be accredited by an accrediting agency approved by the

Department of Education;

        (ii)      the school enter into a Program Participation Agreement ("PPA")

with the Department of Education, requiring that the school comply with the laws and

regulations governing the Title IV programs, and imposing a fiduciary duty on the school

officers to ensure the proper use of all federal funds, including Pell funds;

        (iii)      the school not use Pell funds to pay costs of any educational

program or school location which the Department of Education had not approved as eligible for

Pell funding.  For an educational program to be eligible for Pell funds, the program must have

been at least 600 hours, or at least 16 credits taken over 30 weeks.  A full academic year

consisted of 900 hours or 30 academic credits and, therefore, Pell funding for an eligible program

between 600 and 900 hours (or between 16 and 30 credits) was pro-rated;

        (iv)      the school have an independent auditor conduct and submit to the

Department of Education and the authorized accrediting agency a yearly audit of the school's

4

compliance with Title IV rules and regulations and a yearly financial audit, for which the officers of a school receiving Title IV funds were obliged to provide accurate financial and compliance information and to report any instances of noncompliance with Title IV rules and regulations; and,

(v)    the school not pay its employees a bonus, commission, or incentive based directly or indirectly on success in securing enrollment of, or financial aid to, any student, except under narrow regulatory exceptions.

d.    In addition to requirements imposed on the school, the Department of Education imposed eligibility requirements on the student applicant in order to receive a Pell Grant.  A student was required to complete a Free Application for Federal Student Aid ("FAFSA"), which contained information about the student's income and educational status. The FAFSA was submitted by the school or by the student to the Department of Education's central processing center in Iowa City, Iowa.  Any and all FAFSA information transmitted by the school to the Department of Education was required to be provided by the student.

e.    To ensure its effective administration of Title IV rules and regulations, among other things, the Department of Education relied substantially on the yearly financial and compliance audits provided by an independent auditor to the Department of Education and on the accreditation process to evaluate educational quality and administrative effectiveness at schools eligible for Title IV funds.  The Department of Education also relied on the eligible schools to honestly administer Title IV funds, to maintain accurate documents and records, and to provide truthful information to the school's auditor in its yearly financial and compliance audits.

**Accreditation Requirements For Pell Grant Program Eligibility**

9.     ACICS was a not-for-profit accrediting agency that was approved by the

Department of Education to accredit post-secondary institutions of higher education.  ACICS

accredited the educational programs offered by a school, as well as each location at which the

school offered accredited programs.

10.     To determine whether a school should be accredited, ACICS reviewed, among

other things, the school's educational programs and academic standards, student retention and

withdrawal rates, student academic progress and post-graduation employment.  ACICS also

reviewed the school's record-keeping, including financial aid and tuition payment records,

admissions records, documentary evidence of a student's high school diploma or its equivalent,

and the permanent academic record or transcript of the student's accomplishments.  A school's

falsification of its records constituted grounds to refuse or terminate a school's accreditation.

**SCHEME TO DEFRAUD**

11.     The allegations contained in paragraphs 1 through 10 of this indictment are

incorporated here.

12.     From in or about September 1998 through in or about February 2005, in the

Eastern District of Pennsylvania and elsewhere, defendants

**ALEXANDER LEBED**
and
**LARISA LEBED**

devised and intended to devise a scheme to defraud the Department of Education, and to obtain

money and property from the Department of Education by means of false and fraudulent

pretenses, representations and promises.

6

13.     The purposes of the scheme were to defraud the Department of Education in its administration of Title IV financial aid programs and to obtain federal Pell Grant funds through fraudulent means, which funds the defendants used for personal gain and to promote the underlying scheme.  As a direct result of the defendants' fraudulent scheme, from on or about January 19, 1999, through on or about December 20, 2004, CSC received approximately $13 million in Pell Grant funds from the Department of Education to which CSC was not entitled.

**Manner and Means**

It was part of the scheme that:

***Defendants' False Promises To Honestly Administer Pell Grant Funds***

14.     On or about September 28, 1998, defendant ALEXANDER LEBED signed and submitted an application to the Department of Education to enable CSC to receive Pell Grant funds for its students.  In this application, ALEXANDER LEBED promised that CSC would not provide false or misleading information to the Department of Education in its receipt and stewardship of federal student financial aid funds.

15.     On or about November 17, 1998, the Department of Education approved CSC's participation in the Pell Grant Program, having received notification that defendant LARISA LEBED, on behalf of CSC, had successfully completed the required Department of Education pre-certification training workshop.

16.     On or about November 25, 1998, defendant ALEXANDER LEBED signed a Program Participation Agreement ("PPA"), in which LEBED represented that CSC would comply with Title IV rules and regulations.  ALEXANDER LEBED renewed the PPA on or about April 24, 2000 and January 7, 2003.

7

17.     Beginning in or about September 1998, at the time of CSC's application to the Department of Education to receive Title IV funds, including Pell Grants, and in violation of their representations and agreements with the Department of Education, defendants ALEXANDER LEBED and LARISA LEBED engaged in, directed and caused the creation of fake and falsified records concerning the financial, business and academic affairs of CSC, and made materially false representations to the Department of Education, to CSC's auditor and to ACICS, to fraudulently obtain and misappropriate Pell Grant funds, as follows:

*Obtaining Pell Grants For Ineligible Students*

18.     To deceive the Department of Education to believe that ineligible applicants were eligible for Pell Grants, to misrepresent to CSC's auditor that CSC was in compliance with Title IV rules and regulations when it was not, and to misrepresent to ACICS that CSC maintained appropriate academic documentation for its students when it did not, defendants ALEXANDER LEBED and LARISA LEBED directed and caused employees at CSC routinely to falsify answers on students' FAFSA applications and to create fraudulent supporting documents concerning applicants' academic and income status.  Specifically, the defendants directed CSC employees to falsify that:

        a.     the applicant had a high school diploma or GED, which was required to obtain a Pell Grant when, in fact, the applicant did not;

        b.     CSC had obtained external documentation verifying an applicant's high school diploma or GED, as required by ACICS, when, in fact, CSC employees had not obtained such documentation and instead had fabricated high school transcripts and had forged affidavits;

8

c.      the applicant did not have a Bachelor's degree or equivalent when, in fact, the applicant would have answered that he had a Bachelor's degree or equivalent, a circumstance which would have disqualified the applicant for a Pell Grant; and

d.      the applicant had a lower income or more dependents than actually existed, when the applicant's true income and number of dependents would have disqualified the applicant from receiving a Pell Grant.

19.     To further deceive the Department of Education, CSC's auditor, and ACICS, defendants ALEXANDER LEBED and LARISA LEBED directed and caused students who were ineligible for Pell Grants to bring an eligible friend or relative to CSC; then CSC submitted a false FAFSA using the income information of the eligible friend or relative, even though the Pell funds were used to pay the ineligible student's tuition at CSC.  In such cases, the defendants caused CSC employees to create a fake student file and fake school records in the name of the eligible friend or relative even though that individual did not attend CSC.

*Creating Fake Attendance Records*

20.     Although CSC instructors took actual attendance in class and such actual attendance records were provided daily to defendant ALEXANDER LEBED, from in or about September 1998 and continuing to on or about July 15, 2004, defendants ALEXANDER LEBED and LARISA LEBED directed and caused CSC employees to create a false second set of attendance records which represented that students were present in class when, in fact, such students never enrolled in the class, or never enrolled in, did not attend, or had dropped out of CSC.  The defendants maintained the fake attendance records, among other things, to:

9

a.    deceive CSC's auditor during yearly financial and compliance audits provided to the Department of Education to favorably find that CSC properly obtained Pell disbursements for its students and properly calculated Pell refunds from in or about January 1999 through on or about December 31, 2003;

b.    deceive ACICS during re-accreditation reviews in or about June 2000, and in or about October 2001, in support of CSC's false claim that its student retention rate was exemplary and that students complied with CSC's attendance and academic progress policies; and

c.    deceive Department of Education program reviewers during a September 2001 on-site review of CSC's compliance with Title IV regulations, including CSC's Pell disbursement and refund practices.  In fact, as the defendants well knew:

(i).    CSC routinely obtained Pell disbursements from the Department of Education for students who never enrolled in or attended CSC, had dropped out, or were attending courses not eligible for Pell funding; and,

(ii).    CSC fraudulently calculated Pell refunds based on the false attendance records to retain Pell funds to which CSC was not entitled.

### Creating Fake Tests

21.    In CSC's applications for re-accreditation and accreditation of specific programs, defendants ALEXANDER LEBED and LARISA LEBED represented to ACICS that instructors gave achievement tests to measure students' academic progress.  Such tests and records of test grades were maintained in binders in administrative offices at CSC.  When a student withdrew from school, a test also could be used to demonstrate to the Department of Education the

10

student's attendance until the test date to support an appropriate Pell refund calculation.

22.     From in or about early 2001 through on or about July 15, 2004, defendants ALEXANDER LEBED and LARISA LEBED directed and caused CSC employees to create false tests for students who never enrolled in the class in which the test was given, or who did not enroll in, did not attend, or had dropped out of CSC, so that it would appear that the students were present and had taken the tests. The defendants used the fake tests to justify CSC's fraudulent receipt of Pell funds and its false calculation of Pell refunds to deceive the Department of Education and CSC's auditor. The defendants also used the fake tests to provide false evidence to ACICS of CSC's student retention rates and students' satisfactory academic progress.

### Applying Pell Funds For Ineligible Programs

23.     In addition to its Pell-eligible courses (also known as "long courses"), CSC offered non-eligible courses (known as "short courses"), which were not accredited by ACICS or authorized by the Department of Education to be funded by Pell Grants.

24.     Defendants ALEXANDER LEBED and LARISA LEBED deceived the Department of Education to authorize and disburse Pell funds for students who had enrolled in non-eligible short courses, by directing and causing CSC employees to fabricate school records which appeared to "enroll" the student in a Pell-eligible long course, including:

        a.      fake student files with false enrollment forms for Pell-eligible long courses, which files were maintained by CSC after the students' completion of the non-eligible short courses;

11

b.      fake attendance records reflecting students' continuing attendance in Pell-eligible long courses when, in fact, the students had completed or dropped out of non-eligible short courses;

c.      fake tests demonstrating students' continuing academic achievement in Pell-eligible long courses when, in fact, the students had graduated from or dropped out of non-eligible short courses;

d.      fake academic transcripts and grade-point average ("GPA") calculations reflecting that students had fulfilled the requirements of Pell-eligible long courses when, in fact, the students had not taken the long courses;

e.      fake diplomas reflecting that students had graduated from Pell-eligible long courses when, in fact, the students had not taken or completed long courses; and

f.      fake cash receipts and false account ledger entries reflecting cash payments from students for the difference between the Pell Grants awarded and the full cost of Pell-eligible long courses, although the students had not taken the long course,  no cash payments were made by the students, and no receipts were provided to the students.

25.      Defendants ALEXANDER LEBED and LARISA LEBED deceived CSC's auditor during yearly compliance and financial audits of years ended December 31, 2001, through December 31, 2003, by withholding material information from the auditor that CSC offered short courses which were not eligible for Pell funding.

26.      Defendant LARISA LEBED fraudulently represented to CSC's auditor in yearly financial audits, and to ACICS in an on-site re-accreditation review in or about October 2001, that fake cash receipts and false student account ledger entries, described above in paragraph

12

24(f), accurately reflected real financial transactions when, in fact, the cash transactions were fictitious.

27.     In or about December 2000, ACICS accredited a CSC learning site in Cherry Hill, New Jersey. As a condition of accreditation, ACICS required that Cherry Hill students take a portion of all Pell-eligible programs at CSC's main campus in Southampton, Pennsylvania. Defendants ALEXANDER LEBED and LARISA LEBED misrepresented to ACICS that CSC would and did abide by this accreditation requirement when, in fact, the defendants did not require Cherry Hill students to take a portion of their classes at the Southampton campus and Cherry Hill students did not do so.

### Fraudulent Calculation of Refunds

28.     Under Title IV rules regarding the calculation of Pell refunds, schools were permitted to keep the entire Pell disbursement for a disbursement period if a student completed 60 percent or more of the disbursement period. ACICS and the Department of Education required CSC to maintain an accurate Pell calculation sheet in each student file showing how CSC determined the Pell refund for a student who had withdrawn from school.

29.     To deceive the Department of Education and to allow CSC to keep the whole Pell disbursement for students who, in fact, had not attended, had withdrawn before the 60 percent point, or had graduated from ineligible short courses at CSC, defendants ALEXANDER LEBED and LARISA LEBED failed to notify the Department of Education of its obligation to refund Pell disbursements on the false pretense that the students had completed 60 percent or more of, or had graduated from, a Pell-eligible course.

13

30.    To deceive CSC's auditor, the Department of Education program reviewers, and ACICS regarding their false refund calculations, defendants ALEXANDER LEBED and LARISA LEBED directed and caused CSC employees to create false documents for the students' files, including false attendance records, tests records, account ledger entries and refund calculation sheets, to support the false calculations.

### Illegal Incentives

31.    To encourage CSC admissions representatives and other employees to increase enrollment, defendant ALEXANDER LEBED promised and paid CSC employees a bonus or commission of $25 to $150 for each student they enrolled, in violation of the Department of Education rules and regulations.

32.    To conceal from CSC's auditor and the Department of Education the payment of illegal recruiting bonuses to CSC employees:

a.    defendant LARISA LEBED paid approximately $74,400 in recruiting bonuses to CSC employees by checks written on a chiropractic business bank account unrelated to CSC, owned by the defendants;

b.    defendants ALEXANDER LEBED and LARISA LEBED falsely represented to CSC's auditor, during yearly financial and compliance audits from school years ended on or about December 31, 2001 through on or about December 31, 2003, that they paid no recruiting bonuses or commissions to employees, and they withheld from the auditor the relevant bank records showing the commission payments;

c.    defendant ALEXANDER LEBED instructed CSC employees not to tell anyone that they received recruiting bonuses; and,

14

      d.      defendants ALEXANDER LEBED and LARISA LEBED required CSC employees to sign statements falsely attesting that they never received recruiting bonuses or commissions when, in fact, they had received such bonuses.

### Cover-Up

33.     To perpetuate and protect against disclosure of the fraudulent scheme, among other things:

      a.      defendants ALEXANDER LEBED and LARISA LEBED falsely attested to CSC's auditor, in yearly audits for school years ended June 1999 through December 2003, that were submitted to the Department of Education, that they knew of no fraud or instances of noncompliance involving CSC's administration of Pell Grant funds; and,

      b.      after a search warrant was executed by federal law enforcement officials at CSC on July 15, 2004, defendants ALEXANDER LEBED and LARISA LEBED directed and caused employees to notify students enrolled in short courses that they were required to "re-enroll" in Pell-eligible programs, to cover up the defendants' previous fraudulent receipt and misappropriation of Pell Grant funds for students who were enrolled in non-eligible courses.

34.     To control CSC employees and to enforce their participation in creating falsified CSC records, defendant ALEXANDER LEBED:

      a.      monitored video and audio equipment throughout CSC to observe the employees' movements and conversations, which LEBED could view from internet locations inside and outside of CSC;

      b.      threatened to fire employees unless they participated in creating falsified CSC records; and

c.       fired employees who refused to create falsified CSC records.

### *Financial Enrichment of Defendants and CSC*

35.      From on or about January 19, 1999, through on or about December 20, 2004, in reliance on the false statements, fraudulent misrepresentations and material omissions, described in paragraphs 14 through 34 above, the Department of Education disbursed approximately $13 million in Pell Grant funds from the Federal Reserve Bank into CSC's Pell account no. 3781413111 at M&T Bank in Southampton, Pennsylvania.

36.      From on or about May 3, 1999, through on or about January 20, 2005, defendants ALEXANDER LEBED and LARISA LEBED, for their own benefit, removed from CSC's operating and payroll accounts into which the Pell funds were transferred approximately $4.3 million in proceeds from their fraudulent scheme, through officer draw-downs, disbursements to investment accounts owned and controlled by the defendants, credit card payments for personal expenses, gifts and loans to relatives, and deposits to a financial account for Nationwide Consulting, Inc., a shell entity created by the defendants. The remaining approximately $8.6 million in Pell funds were used in furtherance of the scheme to defraud, including the payment of operating expenses necessary to run CSC.

16

37.    On or about each of the dates set forth below, in Southampton, in the Eastern

District of Pennsylvania ("EDPA"), and elsewhere, defendants

**ALEXANDER LEBED**
**and**
**LARISA LEBED,**

for the purpose of executing the scheme described above, and aiding and abetting its execution,

caused to be transmitted by means of wire communication in interstate commerce the signals and

sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE (on or about) | FROM | TO | DESCRIPTION |
|---|---|---|---|---|
| 1 | 10/11/00 | CSC (EDPA) | Dept. of Ed. (IOWA) | FAFSA application for student #1 (AK) |
| 2 | 10/30/00 | CSC (EDPA) | FAME Florida ("FL") | Financial Aid Input Report for student #1 (AK) |
| 3 | 12/21/00 | CSC (EDPA) | Dept. of Ed. (DC) | Application for Cherry Hill, NJ location approval |
| 4 | 6/22/01 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #2 (DS) |
| 5 | 7/27/01 | CSC (EDPA) | FAME (FL) | 2nd Financial Aid Input Report for student #2 (DS) |
| 6 | 11/6/01 | CSC (EDPA) | Dept. of Ed. (IOWA) | FAFSA application for student #3 (IB) |
| 7 | 11/23/01 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #3 (IB) |
| 8 | 1/25/02 | CSC (EDPA) | Dept. of Ed. (IOWA) | FAFSA application for student #4 (CJ) |

17

| 9 | 3/26/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #4 (CJ) |
| 10 | 5/15/02 | CSC (EDPA) | Dept. of Ed. (IOWA) | 2nd FAFSA application for student #4 (CJ) |
| 11 | 7/29/02 | CSC (EDPA) | FAME (FL) | 2nd Financial Aid Input Report for student #4 (CJ) |
| 12 | 3/18/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #5 (MM) |
| 13 | 5/30/02 | CSC (EDPA) | Dept. of Ed. (IOWA) | FAFSA application for student #6 (OF) |
| 14 | 7/29/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #6 (OF) |
| 15 | 6/1/02 | CSC (EDPA) | Dept. of Ed. (IOWA) | FAFSA application for student #7 (AB) |
| 16 | 6/7/02 | CSC (EDPA) | Dept. of Ed. (IOWA) | 2nd FAFSA application for student #7 (AB) |
| 17 | 6/13/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #7 (AB) |
| 18 | 7/29/02 | CSC (EDPA) | FAME (FL) | 2nd Financial Aid Input Report for student #7 (AB) |
| 19 | 6/3/02 | Dept. of Ed. (DC) | CSC (EDPA) | Pell disbursement of $1,875 for student #8 (JB) |
| 20 | 6/12/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #9 (MP) |
| 21 | 7/29/02 | CSC (EDPA) | FAME (FL) | 2nd Financial Aid Input Report for student #9 (MP) |
| 22 | 9/25/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #10 (LZ) |

18

| 23 | 10/2/02 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #11 (RM) |
| 24 | 10/3/02 | CSC (EDPA) | Dept. of Ed. (DC) | Reapproval (recertification) for CSC |
| 25 | 2/10/03 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #12 (TK) |
| 26 | 7/13/04 | CSC (EDPA) | FAME (FL) | Financial Aid Input Report for student #13 (GD) |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS TWENTY-SEVEN THROUGH THIRTY-FOUR
## 18 U.S.C. § 1341
## (Mail Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 10 of Count One are incorporated here.

2.      From on or about September 28, 1998, through in or about February 2005, in the

Eastern District of Pennsylvania and elsewhere, defendants

## ALEXANDER LEBED
## and
## LARISA LEBED

devised and intended to devise a scheme to defraud the United States Department of Education,

and to obtain money and property from the Department of Education by means of false and

fraudulent pretenses, representations and promises.

It was part of the scheme that:

3.      Paragraphs 13 through 36 of Count One are incorporated here.

4.      From in or about September 1998 through on or about February 11, 2005, in the

Eastern District of Pennsylvania ("EDPA") and elsewhere, defendants

## ALEXANDER LEBED
## and
## LARISA LEBED,

for the purpose of executing the scheme described above, and attempting to do so, knowingly

caused to be delivered by mail or by any private or commercial interstate carrier any matter or

thing: (i) according to the directions thereon, or (ii) at the place at which it was directed to be

delivered by the person or entity to whom it was addressed, the following items described below

for each count, each mailing constituting a separate count:

20

| COUNT | DATE (on or about) | FROM | TO | DESCRIPTION |
|---|---|---|---|---|
| 27 | 9/20/00 | CSC (EDPA) | ACICS (DC) | Letter with application for re-accreditation and attachments |
| 28 | 11/28/00 | CSC (EDPA) | ACICS (DC) | Learning site application (amended) |
| 29 | 11/20/01 | CSC (EDPA) | ACICS (DC) | CSC Institutional Response to evaluation team report |
| 30 | 1/01 | CSC (EDPA) | Froehle & Co. (OHIO) | Pell student list for year 2000 |
| 31 | 1/02/02 | ACICS (DC) | CSC (EDPA) | Letter granting re-accreditation until 12/31/07 |
| 32 | 2/02 | CSC (EDPA) | Froehle & Co. (OHIO) | Pell student list for year 2001 |
| 33 | 1/03 | CSC (EDPA) | Froehle & Co. (OHIO) | Pell student list for year 2002 |
| 34 | 1/04 | CSC (EDPA) | Froehle & Co. (OHIO) | Pell student list for year 2003 |

All in violation of Title 18, United States Code, Section 1341.

## COUNTS 35 THROUGH 149
## (18 U.S.C. § 1957)
## Laundering Monetary Instruments Over $10,000

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 10, and 13 through 36 of Count One are incorporated here.

2       On or about the dates set forth below, in Southampton, in the Eastern District of Pennsylvania and elsewhere,  defendants

### ALEXANDER LEBED
### and
### LARISA LEBED

knowingly engaged in, and attempted to engage in, and aided, abetted, and willfully caused, a monetary transaction affecting interstate commerce in criminally derived property of a value greater than $10,000, described more fully below, and such property was derived from a specified unlawful activity, that is wire fraud, in violation of  Title 18, United States Code, Section 1343, as charged in Counts One through Twenty-Six, and mail fraud, in violation of Title 18, United States Code, Section 1341, as charged in Counts Twenty-Seven through Thirty-Four.

3.      On or about the following dates, checks in amounts exceeding $10,000 were drawn on the CSC Operating Account, that is, M&T Bank account no. 0284000130, held in the name of CSC Institute:

22

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 35 | 7/26/00 | 4941 | $ 40,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 36 | 9/19/00 | 2228 | $ 16,000.00 | Prudential Securities Acct. # 04Y-R27595-65 | CSC Institute FBO Alex Lebed |
| 37 | 11/30/00 | 2225 | $ 16,000.00 | Prudential Securities Acct. # 04Y-R48606-94 | CSC Institute FBO Larisa Lebed |
| 38 | 12/18/00 | 2834 | $ 12,423.28 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 39 | 1/22/01 | 3130 | $ 100,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 40 | 1/22/01 | 3131 | $ 100,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 41 | 2/15/01 | 3328 | $ 13,612.61 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 42 | 3/19/01 | 3502 | $ 14,190.05 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 43 | 4/15/01 | 3810 | $ 20,817.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 44 | 5/10/01 | 3969 | $ 10,448.51 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 45 | 6/11/01 | 4191 | $ 15,960.40 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 46 | 8/22/01 | 4773 | $ 14,673.23 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|-------|--------------------|-----------|--------------|----------------------------------|-----------------------------------------------|
| 47 | 10/4/01 | 5060 | $ 56,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 48 | 11/30/01 | 5495 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 49 | 11/30/01 | 5496 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 50 | 12/10/01 | 5506 | $ 13,322.55 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 51 | 1/24/02 | 5926 | $ 50,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 52 | 1/24/02 | 5927 | $ 50,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 53 | 3/28/02 | 6348 | $ 57,489.42 | Prime Equity Line Acct. # 4386-5422-1134-4699 | Alex Lebed, Larisa Lebed |
| 54 | 4/9/02 | 6486 | $ 11,084.84 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 55 | 5/20/02 | 6768 | $ 32,796.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 56 | 5/20/02 | 6769 | $ 32,796.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 57 | 8/14/02 | 7421 | $ 11,919.25 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 58 | 9/19/02 | 7647 | $50,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 59 | 9/19/02 | 7648 | $50,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 60 | 10/31/02 | 7958 | $ 18,182.44 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 61 | 11/8/02 | 8026 | $ 50,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 62 | 11/8/02 | 8027 | $ 50,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 63 | 12/12/02 | 8240 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 64 | 12/12/02 | 8241 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 65 | 12/12/02 | 8242 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 66 | 12/12/02 | 8243 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 67 | 1/2/03 | 8358 | $ 10,680.19 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 68 | 2/25/03 | 8755 | $ 18,168.50 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 69 | 2/25/03 | 8756 | $ 18,173.50 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 70 | 3/3/03 | 8801 | $ 18,168.50 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 71 | 3/3/03 | 8800 | $ 18,173.50 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 72 | 3/28/03 | 8968 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 73 | 3/28/03 | 8969 | $ 25,000.00 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 74 | 3/28/03 | 8970 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 75 | 3/28/03 | 8971 | $ 25,000.00 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 76 | 4/7/03 | 8994 | $ 26,333.81 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 77 | 5/2/03 | 9238 | $ 32,888.00 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 78 | 5/2/03 | 9237 | $ 33,694.00 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 79 | 6/9/03 | 9476 | $ 10,534.59 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 80 | 6/26/03 | 9614 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 81 | 6/26/03 | 9615 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 82 | 6/26/03 | 9617 | $ 18,168.50 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 83 | 6/26/03 | 9616 | $ 19,723.50 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 84 | 6/30/03 | 9779 | $ 23,539.30 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 85 | 8/8/03 | 9873 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 86 | 8/8/03 | 9874 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 87 | 8/8/03 | 9875 | $ 19,723.50 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 88 | 8/8/03 | 9876 | $ 19,718.50 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |

| | | | | | |
|---|---|---|---|---|---|
| 89 | 9/15/03 | 0021 | $ 35,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
| 90 | 9/15/03 | 0024 | $ 35,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 91 | 9/22/03 | 0029 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 92 | 9/22/03 | 0026 | $ 25,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 93 | 10/6/03 | 10235 | $ 52,637.50 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 94 | 10/6/03 | 10236 | $ 50,343.50 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 95 | 10/6/03 | 10224 | $ 17,396.56 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 96 | 11/10/03 | 10533 | $ 32,725.00 | Schwab Acct. # 8075-9832 | Nationwide Consulting (Alex Lebed, proprietor) |
| 97 | 11/10/03 | 10535 | $ 52,637.50 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 98 | 11/10/03 | 10534 | $ 52,637.50 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 99 | 11/17/03 | 10810 | $ 37,451.00 | Schwab Acct. # 8075-9832 | Nationwide Consulting (Alex Lebed, proprietor) |

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 100 | 12/3/03 | 10698 | $ 20,837.10 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 101 | 12/19/03 | 10825 | $ 67,768.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 102 | 12/19/03 | 10824 | $ 67,768.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 103 | 12/19/03 | 10827 | $ 33,500.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 104 | 12/19/03 | 10826 | $ 33,500.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 105 | 12/19/03 | 10828 | $ 47,514.00 | Schwab Acct. # 8075-9832 | Nationwide Consulting (Alex Lebed, proprietor) |
| 106 | 1/20/04 | 11111 | $ 12,149.16 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 107 | 2/9/04 | 11346 | $ 12,040.72 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 108 | 3/12/04 | 11592 | $ 51,500.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 109 | 3/12/04 | 11593 | $ 51,500.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 110 | 3/16/04 | 11606 | $ 19,798.55 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |

28

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 111 | 4/5/04 | 11668 | $ 18,145.02 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 112 | 5/11/04 | 11780 | $ 16,481.00 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 113 | 6/7/04 | 11869 | $ 14,981.85 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 114 | 6/17/04 | 11936 | $ 75,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 115 | 6/17/04 | 11937 | $ 75,000.00 | Schwab One Acct. # 1102-8753 | Alex Lebed, Larisa Lebed |
| 116 | 7/16/04 | 11951 | $ 49,150.00 | M&T Acct. # 9836216540 | Dmitry Kuzmenkov, Galina Kuzmenkova |
| 117 | 7/16/04 | 11952 | $ 52,150.00 | M&T Bank Acct. # 3781158849 | Galina Kuzmenkova, Alexander Ivanov |
| 118 | 7/19/04 | 11956 | $ 75,500.00 | First Bank of Delaware Acct. # 6002862 | Lena Polnet, Larisa Lebed, Alex Lebed |
| 119 | 7/19/04 | 11957 | $ 75,500.00 | First Bank of Delaware Acct. # 6002862 | Lena Polnet, Larisa Lebed, Alex Lebed |
| 120 | 7/20/04 | 11958 | $ 49,500.00 | First Bank of Delaware Acct. # 6002862 | Lena Polnet, Larisa Lebed, Alex Lebed |
| 121 | 7/22/04 | 11967 | $ 72,500.00 | Wachovia Bank Acct. # 200013333212 | Dynamic Funding ( Lena Polnet, sole proprietor) |

| 122 | 9/17/04 | 12058 | $ 37,500.00 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 123 | 9/17/04 | 12059 | $ 37,500.00 | Wachovia Bank Acct. # 1010100451522 | Alex Lebed, Larisa Lebed |

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 124 | 10/7/04 | EFT # 041006051282908 | $ 12,639.57 | Corporate AMEX Acct. # 3727-113087-51009 | Larisa Lebed, CSC Institute |
| 125 | 1/6/05 | 12243 | $ 50,000.00 | Wachovia Bnk Acct. # 1010100451522 | Alex Lebed, Larisa Lebed |

3.      On or about the following dates, checks in amounts exceeding $10,000 were drawn on the CSC Payroll and Taxes Account, that is, M&T Bank account no. 8892584965 held in the name of CSC Institute, which account received deposits from the CSC Operating Account, that is, M&T Bank account no. 028400130 held in the name of CSC Institute:

| COUNT | Date of Transaction | Check No. | Check Amount | Receiving or Beneficiary Account | Holder(s) of Receiving or Beneficiary Account |
|---|---|---|---|---|---|
| 126 | 10/1/04 | 11027 | $ 25,029.37 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 127 | 10/1/04 | 11029 | $ 25,029.37 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 128 | 1/7/05 | 11334 | $ 12,032.49 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |
| 129 | 1/7/05 | 11331 | $ 12,032.49 | Fleet Bank Acct. # 241046186 | Alex Lebed, Larisa Lebed, Lena Polnet |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF FORFEITURE
### (Mail and Wire Fraud - 18 U.S.C. §§ 1341 and 1343)

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violations of Title 18, United States Code, Section 1343 (wire fraud), as set forth in Counts One through Twenty-Six of this indictment, and of Title 18, United States Code, Section 1341 (mail fraud), as set forth in Counts Twenty-Seven through Thirty-Four of this indictment, defendants

### ALEXANDER LEBED
### and
### LARISA LEBED

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, including but not limited to:

1.  $13,000,000 in proceeds;

2.  All funds and securities up to the amount of $2,608,000.00 in Schwab One Account Number 1102-8753, held in the name of Alexander Lebed and Larisa Lebed at Charles Schwab & Co., Inc. and seized on July 16, 2004;

3.  522 West Moyamensing Avenue, Philadelphia, Pennsylvania;

4.  1016 Rosalie Street, Philadelphia, Pennsylvania;

5.  1104 McKinley Street, Philadelphia, Pennsylvania;

6.  1111 Rosalie Street, Philadelphia, Pennsylvania;

7.  1214 Greeby Street, Philadelphia, Pennsylvania;

8.  1226 Gilham Street, Philadelphia, Pennsylvania;

32

9.      1232 Alcott Street, Philadelphia, Pennsylvania;

10.     1338 Passmore Street, Philadelphia, Pennsylvania;

11.     1417 North 56th Street, Philadelphia, Pennsylvania;

12.     1450 North Felton Street, Philadelphia, Pennsylvania;

13.     2039 Federal Street, Philadelphia, Pennsylvania;

14.     4528 Tolbut Street, Philadelphia, Pennsylvania;

15.     4772 Loring Street, Philadelphia, Pennsylvania;

16.     5937 Malta Street, Philadelphia, Pennsylvania;

17.     6039 Alma Street, Philadelphia, Pennsylvania;

18.     6052 Frontenac Street, Philadelphia, Pennsylvania;

19.     6314 Glenloch Street, Philadelphia, Pennsylvania;

20.     6776 Germantown Avenue, Philadelphia, Pennsylvania;

21.     7410 Torresdale Avenue, Philadelphia, Pennsylvania;

22.     18911 Collins Avenue, Apt. 1207, Sunny Isles, Florida;

24.     Lots 13 and 14, Block 591, EIGHTEENTH ADDITION TO PORT

        CHARLOTTE SUBDIVISION, Sarasota County, Florida, with APN No.

        0967-05-9113.

25.     Lots 25 and 26, Block 1432, TWENTY-NINTH ADDITION TO PORT

        CHARLOTTE SUBDIVISION, Sarasota County, Florida, with APN No.

        0954-14-3225 and APN No. 0954-14-3226, respectively.

26.     Lot 42, Block 646, FOURTEENTH ADDITION TO PORT CHARLOTTE

        SUBDIVISION, Sarasota County, Florida, with APN No. 0969-064-642.

33

## SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

(a)    cannot be located upon the exercise of due diligence;

(b)    has been transferred or sold to, or deposited with, a third party;

(c)    has been placed beyond the jurisdiction of the court;

(d)    has been substantially diminished in value; or

(e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461.

34

## NOTICE OF FORFEITURE
### (Money laundering  - 18 U.S.C. § 1957(a))

**THE GRAND JURY FURTHER CHARGES THAT:**

As a result of the violations of Title 18, United States Code, Section 1957(a), as set forth in Counts Thirty-Five through One Hundred Twenty-Nine of this indictment, defendants

### ALEXANDER LEBED
### and
### LARISA LEBED

shall forfeit to the United States pursuant to Title 18, United States Code, Section 982, any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to: $3,164,788 in proceeds.

### SUBSTITUTE ASSETS

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant,

        (a)        cannot be located upon the exercise of due diligence;

        (b)        has been transferred or sold to, or deposited with, a third party;

        (c)        has been placed beyond the jurisdiction of the court;

        (d)        has been substantially diminished in value; or

        (e)        has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of  any other property of the defendants up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 982.


**A TRUE BILL:**


_____

**FOREPERSON**


_____

**PATRICK L. MEEHAN**
**United States Attorney**
**Eastern District of Pennsylvania**

36